UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAESAREA DEVELLE JAMES, JR.,

                    Plaintiff,                Civil Action No. 13-cv-13936
                                               Honorable David M. Lawson
                                               Magistrate David R. Grand

    v.

CEO OF DLJ MORTGAGE
CAPT'L CORP., WMC MORTG.
CORP., DYKEMA LAW FIRM
MICH., MERS, MAIYA O. YANG
and NIGHT LOR, JONG-JU CHANG,
MICHAEL BLALOCK,

                    Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS DLJ MORTGAGE, WMC MORTGAGE, DYKEMA LAW FIRM, MERS, CHANG AND BLALOCK'S MOTIONS TO DISMISS [47, 48, 72] AND TO DENY PLAINTIFF JAMES'S MOTION FOR SUMMARY JUDGMENT [66]**

## I.   RECOMMENDATION

Before the Court are several dispositive motions: (1) Defendants Dykema Law Firm, Jong-Ju Chang and Michael Blalock's (the "Dykema Defendants") motion to dismiss [47], (2) Defendant WMC Mortgage Corporation's ("WMC") Motion to Dismiss [48], (3) Defendant DLJ Mortgage Capital Corporation ("DLJ Capital") and Mortgage Electronic Registration Systems, Incorporated's ("MERS") Motion to Dismiss [72], and (4) Plaintiff Caesarea James's Motion for Summary Judgment [66]. These motions have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the Court RECOMMENDS that Defendants' respective motions [47, 48, 72] be GRANTED and that James's motion [66] be DENIED.

II.     **REPORT**

A.     **Background**

This case stems from a foreclosure sale of James's residential property located at 6925 Stone Dr., Clarkston, Michigan (the "Property").  In 2006, James took out a loan for $520,000 to purchase the Property and executed a mortgage on the Property in favor of defendant MERS. [47, Ex. 4 at 2].  In 2007, MERS assigned the mortgage to WMC and in 2009, WMC assigned the mortgage to DLJ Capital.  *Id.*  Both assignments were recorded.  *Id.* at 3.

In 2010, after James defaulted on his loan (due to his having made only one payment in two-and-a-half years), DLJ foreclosed on his loan, published notice of the foreclosure via advertisement, and held a sheriff's sale on April 27, 2010.  *Id.*  James failed to redeem the property during the statutory redemption period, which expired October 27, 2010.  *Id.*

In October 2010, James filed suit in Circuit Court in Oakland County, Michigan against DLJ Capital and WMC, alleging a variety of claims related to the foreclosure and sale of his property, and sought to have the sale set aside.  *Id.*  While his original complaint contained allegations of unfair trade practices, violations of Michigan and Ohio mortgage laws, violation of federal disclosure laws, mortgage servicing fraud, violations of Michigan and Ohio notary laws, violations of FTC rules and unjust enrichment, in subsequent filings James added new claims and allegations, including that: he did not execute the mortgage; DLJ Capital lacked standing to foreclose; his interest rate was impermissibly changed, the documents were not authentic; MERS failed to comply with Michigan franchise law, statutory foreclosure rules, and violated his due process rights; the foreclosure was void; MERS could not foreclose by advertisement; the applicable statutory redemption period was one year; the assignment to DLJ Capital from WMC was improper; and the loan documents were not signed by a human being.  *Id.* at 4.  On May 4,

2011, the trial court heard argument on the parties' competing motions for summary judgment and issued a written order rejecting each of James's claims and granting summary judgment to DLJ Capital.[1]  *See generally, id.*  Among other things, the state court held that James lacked standing to sue, that he was guilty of laches, and that he failed to state a claim for fraud.  *Id.* at 7-11.  James unsuccessfully moved the appellate court to stay the ruling pending appeal.  [47, Ex. 5, 6].  On August 2, 2012, the Michigan Court of Appeals entered an order affirming the trial court's dismissal of James's complaint.  *Id.* Ex. 1.

On July 7, 2011, DLJ filed suit for judgment of eviction in Michigan district court.  (*DLJ v. James*, 52nd District Court, Case No. 11-CO2953-LT).  James agreed in writing to a stipulation to expedite the hearing to July 14, 2011.  [47, Ex. 16].  At the hearing, a judgment of eviction was entered, ordering James to move out before July 25, 2011.  [72, Ex. E, I].  On July 29, 2011, an order of eviction was entered against James.  *Id.*  James filed a motion for a new trial, and on July 29, 2011, the trial judge entered an Opinion and Order denying the motion, finding "that the foreclosure process was valid."  [47, Ex. 7].

On July 27, 2011, James voluntarily surrendered to the Morgantown Correctional Facility, in Morgantown, Virginia, to serve a 51-month sentence for mortgage fraud, related in part to the Property.  *Id.* Ex. 8.  On August 4, 2011, James appealed the trial court's denial of his motion for new trial, and in his appeal listed his address as 6925 Stone Drive, the address of the Property.  *Id.* Ex. 9.  On that same day, he served DLJ's counsel, defendant Chang, via fax with a copy of his appeal.  *Id.*  On the fax cover sheet, James listed the Stone Drive address as his contact information.  *Id.*  On November 14, 2011, an Oakland County Circuit Court judge issued James an order to show cause why his appeal should not be dismissed for his failure to file a

---

[1] Although James's state court complaint named WMC as a defendant, the judge in that case noted that the company was never served with process and therefore was not part of the action.

court reporter's certificate or other evidence that a transcript of the lower court proceeding was ordered as required by local court rules. *Id.* Ex. 10. The court gave James until November 30, 2011 to show cause. *Id.* On November 17, 2011, Chang filed an appearance in the case on behalf of DLJ Capital. [Cplt. Ex. A, Pts. 1, 2]. As part of her certificate of service, she certified under penalty of perjury that she served James with a copy of the appearance via first class mail to the Stone Drive address. *Id.* James alleges that Chang also filed a "motion to show cause" in the circuit court, which he alleges was certified as having been served upon him, but which never was. *Id.* at 35-36. James's evidence, however, only cites to the same certificate of service that Chang filed with her initial appearance, which occurred after the circuit court issued its show-cause order. (Compare Cplt. Ex. A Pts. 1-2 with Ex. A Pt. 3). On November 30, 2011, the circuit court granted its own show cause order and dismissed James's appeal. [47, Ex. 11].

On September 13, 2013, James brought suit in this court against DLJ Capital, WMC, the Dykema Defendants, MERS and the purchasers who bought the house at the foreclosure sale, Maya Yang and Night Lor. [1]. James's 54-page hand-written complaint comprises 24 somewhat overlapping counts. *Id.* Ultimately the complaint alleges two overarching schemes: (1) that the various defendants conspired to commit fraud upon the court by falsifying documents related to the underlying mortgage transaction, assignments of the mortgage, foreclosure and sale of the property; and (2) that the various defendants conspired to commit fraud upon the court by falsely certifying that James was served with notice of the circuit court's order to show cause when it was obvious to the defendants that at the time of the order James had long-been evicted from the Property and was residing in a federal penitentiary, thereby depriving him of his right to appeal. *Id.*

On March 11, 2014, defendant WMC filed a motion to dismiss James's complaint,

4

arguing that his claims were barred by *Rooker-Feldman*, *res judicata* and/or collateral estoppel, and that he further failed to state a claim upon which relief could be granted.  [48].  On the same day, the Dykema defendants filed a motion to dismiss that makes similar arguments.  [47].  On April 15, 2014, DLJ Capital and MERS also filed a motion to dismiss on the same grounds.[2] James included an affirmative motion for summary judgment in his response to WMC and the Dykema Defendants' motions to dismiss [66], in violation of the local rules of this District.  *See* E.D. Mich. ECF Policy and Procedure Appx. R5(e).  He also responded to DLJ and MERS's motion to dismiss.  [82].

### B.    Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action where subject matter jurisdiction is lacking.   A Rule 12(b)(1) motion can either challenge the sufficiency of the pleading itself (a facial attack) or the factual existence of subject matter jurisdiction (factual attack).  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Here, all the defendants have attacked the factual existence of subject matter jurisdiction as they have argued that James's claims are barred by *res judicata* and similar doctrines that require exploration outside of the face of the complaint.  On such a motion, a court has broad discretion with respect to what evidence it may consider when determining whether subject matter jurisdiction exists, including evidence outside the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case.  *Id.* Plaintiff bears the burden of establishing that subject matter jurisdiction exists.  *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

---

[2] Defendants Yang and Lor have not filed a motion to dismiss, but instead have filed an answer to the complaint.  [78].  Upon issuance of this Report and Recommendation, the Court will issue a scheduling order for the remaining parties.

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (*citing Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements.  *Iqbal*, 129 S.Ct. at 1949.  *See also*, *Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009).  Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading."  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  Ultimately, "[d]etermining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1949.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### C.      Analysis

The moving defendants seek to dismiss James's complaint, in part, arguing that the claims are barred by *res judicata*, collateral estoppel and/or the *Rooker-Feldman* doctrine. The Court agrees that James's claims against these defendants that relate to the merits of the underlying state court case are barred by *Rooker-Feldman*. The Court further agrees that it lacks subject matter jurisdiction over James's remaining claims against these defendants, which are premised upon Federal Rule of Civil Procedure 60(b). Because all three pending motions to dismiss make generally the same arguments, and because the Court finds that the same rationale applies to all of the moving defendants, the Court will address the various defendants' motions simultaneously, per issue.

### 1.      *Claims Arising out of Merits of State Court Action*

The *Rooker-Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*

*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The doctrine applies where a plaintiff complains of being injured by the challenged state court decision itself, for example, where a plaintiff "asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law." *McCormick v. Braverman*, 451 F.3d 382, 394-95 (6th Cir. 2006).

A long line of cases in this district confirm that James's claims against DLJ Capital and MERS arising out of their alleged conspiracy to commit fraud in relation to the underlying mortgage transaction and documentation placed before the state court are barred by the *Rooker-Feldman* doctrine.  For example, in *Givens v. Homecomings Financial*, 278 Fed Appx. 607 (6th Cir. 2008), the plaintiff executed a mortgage on his home, defaulted on the loan and the mortgagee foreclosed.  *Id.* at 608.  After a sheriff's sale, the mortgagee brought an eviction proceeding and the court issued an eviction order.  *Id.*  The plaintiff appealed the judgment to circuit court, but, just as with James here, his appeal was dismissed for failure to file a transcript of the lower court proceedings.  *Id.*  The plaintiff then brought suit in federal court, seeking a preliminary injunction to prevent the mortgagee from entering the home.  *Id.*  The plaintiff asserted that an injunction was warranted because the defendants had not provided him with verification of the debt and had conspired to deprive him of the property.  *Id.*  The district court dismissed the plaintiff's complaint, concluding that under *Rooker-Feldman* it lacked subject matter jurisdiction over the suit, since the plaintiff was ultimately seeking to reverse the state court judgment.  *Id.*  The Sixth Circuit affirmed, finding that "[b]ecause Givens is effectively attempting to appeal from the state order granting possession to [the mortgagee], his suit was properly dismissed under *Rooker-Feldman*." *Id.* at 608-609.

Other courts in this district have reached similar results on similar facts.  *See Folson-El*

8

*Bey v. Wells Fargo Home Mtg.*, No. 11-cv-13534, 2012 U.S. Dist. LEXIS 58366 (E.D. Mich. Mar. 13, 2012) *adopted by* 2012 U.S. Dist. LEXIS 58365 (E.D. Mich. Apr. 26, 2012) (plaintiff's arguments "come down to one premise: that Freddie Mac was not entitled to possession of the property in question and thus complaint was barred by *Rooker-Feldman*); *Davis v. U.S. Bank Nat. Ass'n.*, No. 10-13394, 2011 U.S. Dist. LEXIS 6790, *12 (E.D. Mich. Jan. 25, 2011) ("Simply stated, Plaintiff invites this Court to relieve him from both the state district court judgment of possession and to find that the Wayne County Circuit Court erred in determining the validity of the sheriff's deed.  This, however, is exactly the type of appellate review that a federal district court may not conduct under *Rooker-Feldman*."); *Battah v. ResMAE Mortg. Corp.*, 746 F. Supp. 2d 869, 873 (E.D. Mich. Oct. 28, 2010) ("Plaintiff lost a state court foreclosure and possession action, and the state court entered an order of eviction against him. Any of Plaintiff's current claims which seek to disturb the state court judgments of foreclosure, possession, or eviction, are subject to the *Rooker-Feldman* doctrine."); *Luckett v. U.S. Bank Nat. Ass'n*, No. 08-14285, 2009 U.S. Dist. LEXIS 157 (E.D. Mich. Jan 5, 2009) (affirming magistrate judge recommendation denying TRO on the basis of no likelihood of success and explaining that "to sustain the Plaintiff's complaint in this case would require the Court to in effect act as an appellate tribunal and conclude that the Michigan court simply made the wrong decision in the foreclosure and possession action.  Under the *Rooker-Feldman* doctrine, as refined in Exxon Mobil, the complaint is clearly subject to dismissal under Rule 12(b)(1)."); *Burrows v. McEvoy*, No. 08-11697, 2008 U.S. Dist. LEXIS 94499, * 13-14 (E.D. Mich. Nov. 12, 2008) (Finding plaintiff's claims barred by the *Rooker-Feldman* doctrine where plaintiff was seeking an injunction to prevent a state court ordered eviction and where she was claiming she had been deprived of property without due process of law by being deprived of discovery, not properly

notified of her appeal rights, evidence fraudulently submitted in furtherance of the state court judgment and the underlying debt not being properly validated).

Here, the vast majority of James's claims seek to re-litigate the question of the validity of the state court judgment against him. While James couches his allegations in a haze of conspiracy to commit fraud on the court, his allegations of fraud in these claims focus on the underlying documents presented to the various state courts to justify the foreclosure and eviction.[3] The dates he associates with the fraudulent actions of the various defendants, too, center almost exclusively on the time period around the foreclosure and sheriff's sale (April 2010) (Counts III-V, VIII-XI, XIII-XV, XVII, XIX-XXII, XXIV) or even prior to that (Counts I, XII (October 2007); Count II (September 2009)). James made many, if not all, of these same arguments to the various state courts themselves (including that he did not sign the mortgage, that the notarization was fraudulent, that the assignment was not signed by a real person, etc.). The state court independently reviewed all of the underlying documents and found the foreclosure valid. [47, Ex. 1, 4, 7]. This court has no power to review those decisions.

---

[3] Count I of the complaint alleges a defective notarized affidavit of assignment, Count II alleges a fraudulent assignment, Count III alleges a violation of the 14th Amendment related to the defective affidavit; Count IV alleges presentation of fraudulent documents and failure to comply with foreclosure by advertisement requirements; Count V alleges fraud in the inducement; Count VI alleges failure to stop eviction proceedings in face of appeal; Count VII alleges the same; Count VIII alleges violation of court order regarding foreclosure by advertisement and race and class discrimination; Count IX alleges a takings claim based on the foreclosure; Count X alleges fraud related to a forged deed; Count XI alleges economic harassment due to race; Count XII alleges failure to provide James with notice of a defect in the mortgage; Count XIII alleges a bona fide purchaser claim; Count XIV alleges a statute of frauds violation; Count XV alleges unclean hands; Count XVI alleges an anti-lock out statute violation; Count XVII alleges an unexecuted acknowledgement; Count XVIII alleges a claim for claim and delivery; Count XIX alleges in part a conspiracy to obtain a fraudulent mortgage by way of a fraudulent deed; Count XX alleges violations of various Federal Debt Collection Practices Act provisions; Count XXI alleges Truth in Lending Act violations; Count XXII alleges in part a violation of 18 U.S.C. § 1984 and §1962 for unlawful debt; Count XXIII alleges a violation of FTC rules; and Count XXIV alleges a violation of 18 U.S.C. §§ 1001 and 1035 related to underlying mortgage documents.

As regard to the remaining counts, Counts VI, VII, XVI focus on the defendants' failure, in December 2010 to cease eviction proceedings pending appeal, despite the fact that the appeals court twice denied James's motion to stay the judgment pending appeal.  (Cplt. at 11-12).  These counts also are precluded by the *Rooker-Feldman* doctrine as they involved actions that took place not only prior to the appeals court's decision on the merits of James's appeal but, based on his own allegations, before his case was even heard before the trial court, in May 2011. However, to the extent these counts do not fall under *Rooker-Feldman*, they should nevertheless be dismissed for failing to state a claim upon which relief could be granted, as the court documents show that Defendants had no obligation to stay eviction proceedings in the face of those rulings.

Count XXIII alleges a claim for violation of due process related to something that occurred on November 6, 2012, but James does not allege what that thing is – however the bulk of his allegations in this count appear to relate back to the merits of the underlying state case, and he previously alleged a due process claim in state court, so the Court finds that this Count also fails under *Rooker-Feldman*.

Finally, Count XVIII cites no date at all, but simply alleges a claim for "claim and delivery," arising out of the same facts already adjudicated by the state courts.[4]  Therefore, all of James's claims against defendants DLJ Capital, MERS, WMC, Dykema, Blalock and Chang[5]

---

[4] Count VI and part of Counts XIX and XXII complain of actions taken by Defendant Chang on November 17, 2011, which is dealt with in the second section of this Report and Recommendation.  Further, although James mentions race and class status in passing in several of his counts, none of his counts appears to be premised on a civil rights statute, and his passing references to race are insufficient nevertheless to state such a claim.  Further, he has not argued in his briefs that he was stating such a claim.

[5] That all defendants except DLJ Capital were not parties to the underlying state court action is of no consequence to the application of the *Rooker-Feldman* doctrine to this case, as the

arising out of the merits of the underlying state court case must be dismissed for lack of subject matter jurisdiction.[6]

### 2.      *Claims Arising out of Actions of Dykema Defendant Chang in Circuit Court*

The Court further finds that James's claims against these defendants arising out of an alleged conspiracy to prevent him from consummating his appeal of the eviction judgment should also be dismissed for lack of subject matter jurisdiction (Count VI and parts of Counts XIX and XXII).  James bases these claims on Federal Rule of Civil Procedure 60(b)(3), which provides that a party may be relieved of an order or judgment based on "fraud (whether previously called intrinsic or extrinsic), misrepresentation or misconduct by the opposing party." Fed. R. Civ. P. 60(b)(3).  Parties may seek relief from judgment under this rule by way of a motion or an independent action.  *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 555 (6th Cir. 2005).  However, unless that motion either "(1) seeks no relief other than relief from a prior judgment or (2) is originally filed in the same court that rendered the judgment," the federal court has no subject matter jurisdiction without the existence of an independent basis for subject

---

pertinent consideration is that the party seeking to litigate in federal court was the losing party in state court.  *See Johnson v. DeGrandy*, 512 U.S. 997, 1005-1006 (*Rooker-Feldman* bars state court loser from seeking appellate review of state judgment in federal court, but does not bar entity that was not party to state court case from litigating same issues for first time in federal court).

[6] Even if the Court were to find that some of James's claims were not specifically barred by *Rooker-Feldman*, those that focus on the underlying merits of the case would nevertheless be barred by either *res judicata* or collateral estoppel for the same reasons cited above, since any of his instant claims that were not asserted in the state court proceeding certainly could have been. *Adair v. State*, 470 Mich. 105, 680 N.W.2d 386, 396 (Mich. 2004) (Michigan law recognizes claim preclusion where "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first."). Under those doctrines, as with *Rooker-Feldman*, privity of the parties of the parties is not strictly required where the doctrine is being asserted defensively. *McCoy*, 369 Fed. Appx. at 650 (citing *Monat v. State Farm Insurance Co.*, 469 Mich. 679, 677 N.W.2d 843 (2004)).

matter jurisdiction. *Id.* Stated another way, in order for James to proceed on a Rule 60(b) motion in this Court, where it has already been established above that the Court does not have subject matter jurisdiction over his other claims, he must either be seeking no relief other than relief from the state circuit court's dismissal of his appeal, or he must file his Rule 60(b) motion in the court that rendered the judgment against him. *Id.* Neither exception applies here. James did not file this motion with the state circuit court that dismissed his appeal, nor is he solely seeking relief from that order. Instead, in this federal court action he is seeking to set aside both state court judgments against him – the substantive dismissal of his affirmative suit and the judgment of eviction. Because this Court does not have independent subject matter jurisdiction over James's other claims against these defendants, and because James's Rule 60(b) claim does not satisfy either exception to that requirement, those claims should be dismissed for lack of subject matter jurisdiction.[7] For these reasons, the moving Defendants' respective motions to

---

[7] Even if this Court did have subject matter jurisdiction over James's Rule 60(b) claim, his claim would likely still be dismissed for failing to state a claim upon which relief could be granted. Even accepting as true the allegation that Chang actually and purposefully sent either her motion or the state court's order to show cause to an address knowing James would not receive it (the documents James attaches to support his position only show that Chang sent a copy of her initial appearance to James at the Stone Drive address), this does not rise to the level of a fraud on the Court because James has not alleged that Chang had any duty to send these documents elsewhere or inform the Court of James's whereabouts. One of the elements for a claim of fraud on the court is a duty on the part of the alleged fraudster. *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009). James must therefore allege that Chang had a duty to advise the Court of his whereabouts. He has not so alleged, and the Court is unaware of any such requirement in either the court rules or in the professional code of ethics. In fact, the local rules of this Court make clear that each party is responsible for keeping the Court apprised of any change of address. *See E.D. Mich. LR 11.2. See also, Sango v. Johnson*, No. 13-12808, 2013 U.S. Dist. LEXIS 123411, *3-4 (E.D. Mich. Aug. 29, 2013) (vacated on other grounds); *Carey v. King*, 856 F.2d 1439, 1441 (9th Cir. 1988); *Brown v. White*, No. 09-12902, 2010 U.S. Dist. LEXIS 42362 (E.D. Mich. Apr. 30, 2010)); *see also* Mich. R. Civ. P. 2.107(C) ("Service of a copy of a paper on . . . a party must be made by deliver or by mailing to the party *at the address stated in the party's pleadings*.") (emphasis added). Here, the documents James attaches to his complaint demonstrate that the address on file with the state court was, at least at the time he filed his appeal, the Stone Drive address, despite the fact that at the time he filed his appeal he had

13

dismiss [47, 48, 72] should be granted, and James's claims against them should be dismissed.

### 3.    *James's Motion for Summary Judgment*

In light of this Court's above recommendation that James's claims against the moving Defendants should be dismissed for lack of subject matter jurisdiction, his affirmative motion for summary judgment, at least with respect to these Defendants, should be denied as moot.  It is not clear whether James's motion also seeks summary judgment against the remaining Defendants, Yang and Lor.  While James's motion states that it is seeking summary judgment "against all defendants," nowhere in his motion does he make factual allegations against either Yang or Lor.  Nor are there any documents in his filings that relate to either of these Defendants.  Therefore, the Court does not fault these Defendants for not having filed a response to this motion, which itself was in violation of this Court's Local Rules, which require motions to be filed separately from responses.  *See* E.D. Mich. ECF Policy and Procedure Appx. R5(e).

Furthermore, no discovery has been had on this matter, and this Court has not yet entered a discovery order, pending the outcome of the present motions.  A party may not seize the opportunity for summary judgment by filing a motion before the other party can obtain and

---

already been incarcerated for over a week.  [Cplt. Ex. A, Pts. 1-3; Ex. B; 82, Ex. E and F].  He further faxed a copy of his appeal to Chang herself on the same day, listing the Stone Drive address.  [47, Ex. 8].  He has not alleged why, despite these facts, Chang was required to send documents elsewhere or that she was even aware of his location, except that she was aware he was in prison.  The case he cites for the proposition that one who knows the opposing party does not reside at the address listed has a duty to inform the court, *Bell v. JP Morgan Chase* Bank, No. 06-11550, 2006 U.S. Dist. LEXIS 94946, *6-8 (E.D. Mich. Nov. 30, 2006), is inapposite.  There, the plaintiff filed his complaint listing the address of the disputed property as the address for the defendant bank.  A default against the bank for failure to respond was ultimately vacated and sanctions were awarded against the plaintiff.  Here, it was James himself who listed his address as Stone Drive, after he was already incarcerated.  Based on this representation, Chang had no duty to investigate or doubt that James could receive mail that was sent to that address, either through a forwarding directive or otherwise.  For these reasons, even if James could satisfy subject matter jurisdiction on this claim, his complaint would fail to state a claim upon which relief could be granted.

submit its evidence. Summary judgment should "be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Federal Rule of Civil Procedure 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Here, neither Yang nor Lor has filed such an affidavit or declaration. However, as noted above, James's motion itself neither complies with this Court's Local Rules, nor makes clear that it even applies to these Defendants and, as such, the Court does not fault them for not having made such a showing. Because discovery has not yet occurred on this matter, and because prudential considerations favor resolving cases on their merits, rather than on technicalities, (*see Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003) (articulating Sixth Circuit's preference for deciding cases on the merits)), the Court recommends denying, without prejudice, the remainder of James's motion for summary judgment [66] (to the extent it seeks judgment against Yang and Lor) as premature.

## III.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the moving Defendants' motions to dismiss [47, 48, 72] be GRANTED, that James's motion for summary judgment [66] as it applies to those Defendants be DENIED AS MOOT, and that all claims against Defendants DLJ Capital, MERS, WMC, Dykema, Chang and Blalock be DISMISSED. The Court further RECOMMENDS that James's motion for summary judgment [66] as it applies to Defendants Yang and Lor be denied without prejudice.

15

Dated: July 11, 2014                         s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

                                             s/Eddrey O. Butts
                                             EDDREY O. BUTTS
                                             Case Manager

Dated:  July 11, 2014


16